# Exhibit 1

## IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF ALABAMA
## SOUTHERN DIVISION

| | | |
|---|---|---|
| **SPRINGHILL AVENUE UNITED** | ) | |
| **METHODIST CHURCH, INC.,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **v.** | ) | **Case No. 1:24-cv-00375-KD-B** |
| | ) | |
| **NATIONS ROOF GULF COAST,** | ) | **UNOPPOSED** |
| **LLC, et al.,** | ) | |
| | ) | |
| **Defendants.** | ) | |

## NATIONS ROOF GULF COAST, LLC'S
## UNOPPOSED MOTION FOR LEAVE TO
## FILE THIRD-PARTY COMPLAINT

Nations Roof Gulf Coast, LLC ("Nations Roof"), pursuant to Federal Rule of Civil Procedure 14, respectfully requests leave to file the Third-Party Complaint attached as <u>Exhibit A</u>. The purpose of this motion is to enable Nations Roof to join Roof US, LLC and Roof US Roofing and Restoration, LLC (collectively, "Roof US"), which are or may be liable to Nations Roof for all or part of the claims against it. *See* Fed. R. Civ. P. 14(a)(1).

## I.    RELEVANT FACTS

In or around October of 2020, Plaintiff contracted with Nations Roof to repair and replace several roofs of its church damaged by Hurricane Sally. (ECF No. 1-2, Compl. ¶ 22.) In turn, Nations Roof retained Roof US to perform the work and

entered into a Subcontract Agreement. (*See* Subcontract Agreement, <u>Exhibit B</u>.)

Under the Subcontract Agreement, Roof US agreed to

1.  indemnify, pay for the defense, and hold harmless Nations Roof for any claims, suits, damages, losses and expenses, including attorney's fees, arising out of or resulting from arising out of Roof US's work;

2.  add Nations Roof as an additional insured on its commercial general liability, automobile liability, and excess umbrella liability insurance policies; and

3.  warrant its work against all deficiencies and defects in workmanship and materials and warranted that all work it performed was good quality, free from faults and defects, and in conformance with the scope of work.

(*Id.* at 4, 6, 7.)

According to Plaintiff, at some point after Roof US's completion of the work, it began to observe moisture damage and leaking on the interior of the premises. (ECF No. 1-2, Compl. ¶ 25.) Plaintiff alleges that it retained Thompson Engineering to investigate the roof systems, and that the engineering firm determined that defects on the Sanctuary Building and Education Building roofs were due to improper installation and faulty workmanship. (*Id.* ¶¶ 28, 29.)

Shortly after Nations Roof appeared in this case, it served Roof US with a defense and indemnification demand pursuant to the Subcontract Agreement because Roof US is or may be liable to Nations Roof for all or part of the claims against it. (*See* Defense and Indemnification Demand, <u>Exhibit C</u>.) Roof US

acknowledged receipt of the demand but has failed to accept the tender of defense and indemnification or honor its obligations under the Subcontract Agreement.

## II.    LEGAL STANDARD

Pursuant to Rule 14(a)(1) of the Federal Rules of Civil Procedure, "[a] defending party may, as third-party plaintiff, serve a summons and complaint on a nonparty who is or may be liable to it for all or part of the claim against it." Fed. R. Civ. P. 14(a)(1). Where more than 14 days have elapsed since the defendant has served its original answer (as it has here), the defendant must obtain leave of court to file the Third-Party Complaint. *Id.*

Joinder of a third-party pursuant to Rule 14(a) is proper to "'reduce litigation by having one lawsuit do the work of two'" where "the defendant's right against the third party is merely an outgrowth of the same core of facts which determines the plaintiff's claim." *United States v. Joe Grasso & Son, Inc.*, 380 F.2d 749, 751 (5th Cir. 1967) (quoting *Falls Indus., Inc. v. Consolidated Chem. Indus., Inc.*, 258 F.2d 277, 283 (5th Cir. 1959)).[1] Moreover, "[w]hether a party to an action shall be allowed to implead an additional party rests in the sound discretion of the court." *Aerial Agr. Serv. of Mont. v. Richard*, 264 F.2d 341, 344–45 (5th Cir. 1959) (quoting 3 Moore's Federal Practice ¶ 1405 at 414 (2d ed.)).

---

[1]    Fifth Circuit decisions handed down prior to October 1, 1981, are considered binding precedent in the Eleventh Circuit. *Bonner v. City of Prichard, Ala.*, 661 F.2d 1206, 1207–10 (11th Cir. 1981) (en banc).

"The law is well-settled that the third-party's liability must be in some way derivative of the outcome of the primary suit against the original defendant." *Engel v. Liberty Mut. Ins. Co.*, No. CV 20-00082-KD-N, 2020 WL 5521372, at *3 (S.D. Ala. Sept. 14, 2020) (citing *United States v. Olavarrieta*, 812 F.2d 640 (11th Cir. 1987) and collecting supporting cases). Courts consider several factors when deciding whether to allow a third-party complaint to proceed, including:

1.    Whether the claim or claims lack merit;

2.    Undue delay by the movant;

3.    Risk of prejudice to the new or the non-moving party; and

4.    Risk of delay or unduly complicating the action.

*Jones v. Whirlpool Corp.*, No. CV 22-00475-KD-N, 2025 WL 1151035, at *3 (S.D. Ala. Apr. 17, 2025) (citing 6 Charles Alan Wright & Arthur R. Miller, *Federal Practice & Procedure* § 1443 (3d ed. 2024)). *See also Williams v. Saxon Mortg. Services, Inc.*, 2007 WL 2828752, at *6 (S.D. Ala. 2007) (reciting similar factors). Essentially, "[s]o long as the third-party action is 'proper' and does not prejudice the other parties, motions for leave under Rule 14(a) should be granted." *Millers Cap. Ins., Co. v. Hydrofarm, Inc.*, 340 F.R.D. 198, 210–11 (D.D.C. 2022) (internal citations omitted).

## III.    ARGUMENT

All the factors for leave to file a third-party complaint are satisfied here, so Nations Roof's motion is due to be granted.

First, Nations Roof's claims against Roof US are both substantial and meritorious. (*See* Third-Party Complaint, Ex. A.) Nations Roof is asserting its Third-Party Complaint as a third-party plaintiff under Federal Rule of Civil Procedure 14 and based on the allegations in Plaintiff's Complaint against Nations Roof. Based on those allegations, Roof US is or may be liable to Nations Roof for all or part of the claims against Nations Roof.

Second, Nations Roof has not unduly delayed in filing this motion. Nations Roof raised the issue of defense and indemnification with Roof US as early as November 22, 2024, shortly after Nations Roof appeared in this action. (*Compare* Ex. C, Defense and Indemnification Demand, *with* ECF Nos. 1 and 2, Notice of Removal and Answer.) In the demand, Nations Roof made clear its intent to pursue third-party claims against Roof US if the issue of defense and indemnity was not resolved. (Ex. C, Defense and Indemnification Demand.) Since then, counsel for Nations Roof has been in contact with counsel for Roof US concerning the indemnity demand and Nations Roof's claims against Roof US. Counsel for Nations Roof also sent a courtesy copy of a draft of the proposed Third-Party Complaint to counsel for Roof US prior to filing this motion. Nations Roof also raised the issue

of the need to add Roof US as a party with counsel for Loyd's on or about April 1, 2025 and with counsel for Plaintiff and Arbitrator White on or about April 9, 2025.

Third, neither Roof US nor any party to this action will be prejudiced. Counsel for Plaintiff and Lloyd's were consulted about the filing of this motion, and they have no opposition. Roof US will also not be prejudiced because this case is still in its infancy and counsel for Nations Roof has been in contact with counsel for Roof US concerning indemnity and the Third-Party Complaint.

Finally, the claims against Roof US will involve similar evidence, parties, witnesses, and issues. No discovery has taken place either in this action or in the arbitration between Nations Roof and Plaintiff.[2] Allowing Nations Roof's claims against Roof US to proceed in this action will not delay or complicate the action but will effectuate the purposes of Rule 14 by avoiding circuitous actions and duplicative suits.[3]

---

[2]    Much of the time since Nations Roof appeared in the case has been devoted to addressing threshold issues. For instance, at the outset of the case, the parties engaged in briefing concerning Plaintiff's motion to remand, which the Court denied on January 30, 2025. (ECF No. 15.) Nations Roof then filed a motion to compel arbitration of the claims against it, which the Court also granted on March 7, 2025. (ECF No. 22.) Nations Roof and Plaintiff then submitted their dispute to arbitration with Arbitrator White, who entered an arbitration scheduling order on April 18, 2025.

[3]    To avoid burdening this Court with this motion and other related filings, counsel for Nations Roof, on several occasions, asked counsel for Roof US to agree to submit the parties' dispute to the ongoing arbitration with Arbitrator Jarrod White. Counsel for Roof US has not agreed to do so voluntarily.

## IV.    CONCLUSION

Nations Roof respectfully requests leave to file the Third-Party Complaint attached as Exhibit A.

Respectfully submitted this 22nd day of May, 2025.

/s/ Jorge A. Solis
Jorge A. Solis (ASB-2144-A14T)
Katherine T. Powell (ASB-1047-H60T)
Chatham M. DeProspo (ASB-1108-T88G)

**BUTLER SNOW LLP**
One Federal Place, Suite 1000
1819 Fifth Avenue North
Birmingham, Alabama 35203
(205) 297-2200
Jorge.Solis@butlersnow.com
Katie.Powell@butlersnow.com
Chatham.DeProspo@butlersnow.com

*Counsel for Nations Roof Gulf Coast, LLC*
(*Defendant*)

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the foregoing has been served on all parties to this action by e-file using the Court's CM/ECF system, electronic mail and/or by depositing a copy of the same in the U.S. Mail, first-class postage prepaid and properly addressed as follows:

Jonathan R. Law
DANIEL, UPTON, ANDERSON,
LAW & BUSBY, P.C.
30421 State Highway 181
Daphne, Alabama 36527
JRL@dupm.com

Gregory E. Vaughan
VAUGHAN, POE, & BISHOP, LLC
507 Church Street
Mobile, Alabama 36602
greg@vaughanpoe.com

> *Counsel for Springhill Avenue United Methodist Church*
> (*Plaintiff*)

Joseph Aguirre
WOOD, SMITH, HENNING
& BERMAN LLP
1230 Peachtree Street, Suite 2350
Atlanta, Georgia 30309
jaguirre@wshblaw.com

> *Counsel for Lloyd's of London*
> (*Defendant*)

Done this the 22nd day of May, 2025.

> /s/ Jorge A. Solis
> OF COUNSEL

# Exhibit A
## (omitting internal exhibit)

## IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF ALABAMA
## SOUTHERN DIVISION

| | | |
|---|---|---|
| **SPRINGHILL AVENUE UNITED** | ) | |
| **METHODIST CHURCH, INC.,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **v.** | ) | |
| | ) | |
| **NATIONS ROOF GULF COAST,** | ) | **Case No. 1:24-cv-00375-KD-B** |
| **LLC; LLOYD'S OF LONDON;** | ) | |
| **LLOYD'S MARKET** | ) | |
| **ASSOCIATION; and THE** | ) | |
| **CERTAIN UNDERWRITERS AT** | ) | |
| **LLOYD'S, LONDON,** | ) | |
| | ) | |
| **Defendants,** | ) | |
| | ) | |
| **v.** | ) | |
| | ) | |
| **ROOF US, LLC and** | ) | |
| **ROOF US ROOFING &** | ) | |
| **RESTORATION, LLC,** | ) | |
| | ) | |
| **Third-Party Defendants.** | ) | |

## THIRD-PARTY COMPLAINT AGAINST
## ROOF US, LLC AND ROOF US ROOFING & RESTORATION, LLC

Nations Roof Gulf Coast, LLC ("Nations Roof") files this Third-Party

Complaint against Roof US, LLC and Roof US Roofing & Restoration, LLC

(collectively, "Roof US").

## PRELIMINARY STATEMENT

Nations Roof is asserting this Third-Party Complaint as a third-party plaintiff under Federal Rule of Civil Procedure 14 and based on the allegations in Plaintiff's Complaint against Nations Roof. Based on those allegations, Roof US is or may be liable to Nations Roof for all or part of the claims against Nations Roof. By asserting these third-party claims against Roof US, Nations Roof does not waive, but expressly reserves, all its defenses to Plaintiff's Complaint. Nations Roof denies any wrongdoing or liability on its part.

## PARTIES

1.    Nations Roof Gulf Coast, LLC is a limited liability company that does business in Mobile County, Alabama. Nations Roof is asserting claims against Roof US as a third-party plaintiff.

2.    Roof US, LLC is a limited liability company formed in the State of Georgia. Upon information and belief, Roof US, LLC owned, managed, operated, or controlled Roof US Roofing & Restoration, LLC at all relevant times.

3.    Roof US Roofing & Restoration, LLC is a limited liability company formed in the State of Georgia. Upon information and belief, Roof US Roofing & Restoration, LLC was owned, managed, operated, or controlled by Roof US, LLC at all relevant times.

**JURISDICTION**

4.       This Court has subject matter jurisdiction over this action based on federal question jurisdiction under 28 U.S.C. §§ 1331. Plaintiff asserted a cause of action under the Magnuson-Moss Warranty—Federal Trade Commission Improvements Act ("Magnuson-Moss Warranty Act") against Nations Roof in the Complaint. (*See* ECF No. 1-2 at 13–14, Compl. ¶¶ 45–49; *see also* ECF No. 15 (adopting report and recommendation finding that the Court has subject matter jurisdiction under 28 U.S.C. §§ 1331).)

5.       The Court also has supplemental jurisdiction over Nations Roof's claims against Roof US pursuant to 28 U.S.C. § 1367. The allegations, claims, and damages sought by Nations Roof from Roof US are so related to the underlying claims against Nations Roof that they form part of the same case or controversy and derive from a common nucleus of operative facts.

**FACTS**

6.       On or about October 17, 2020, Plaintiff Springhill Avenue United Methodist Church, Inc. ("Plaintiff") contracted with Nations Roof to replace the roofs of the sanctuary and education buildings of the church operated by Plaintiff in Mobile, Alabama.

7.       Nations Roof subcontracted the work to Roof US, and Nations Roof and Roof US entered into a Subcontract Agreement (Exhibit A).

8.     Under the Subcontract Agreement, Roof US was responsible for replacing the shingle roof on the Sanctuary Building and the low slope roof on the Education Building. Roof US agreed to "perform, furnish and provide all labor, materials, equipment, tools, scaffolding, hoisting, fall protection and services proper for or incidental to the performance and completion of the . . . 'Work'." (Ex. A § 2.)

9.     Under the Subcontract Agreement, Roof US also agreed to "perform the Work in a timely and workmanlike manner and in accordance with the Contract Documents and all applicable statutes, ordinances and regulations, to the satisfaction of Nations [Roof] and all parties to whom Nations [Roof's] work may be subject to approval, including the Architect and Owner." (*Id.* § 3.) Roof US also agreed to "assume[] towards Nations [Roof] all of the obligations applicable to its work with Nations [Roof] has assumed toward the Owner, General Contractor and/or Construction Manager." (*Id.* § 1.)

10.     Roof US was required to perform the work in a good and workmanlike manner, which included, among other things, to properly remove the then-existing roofs on the Sanctuary and Education Buildings, properly preparing the surfaces, and replacing the roofs on both buildings in accordance with applicable building codes, industry standards, specifications, and installation instructions of the manufacturers of the roof systems and associated components. (*Id.* at Scope of Work.)

4

11.    Roof US also warranted its work:

**Section 14. Warranty.**

> (a)    The Subcontractor warrants its Work against all deficiencies and defects in workmanship and materials and as called for in the Contract Documents. Subcontractor warrants that all work performed by the Subcontractor shall be of good quality, free from faults and defects, and in conformance with the Contract Documents. All Work not conforming to these requirements, including substitutions not properly approved and authorized, may be considered defective. Subcontractor agrees also to satisfy such warranty obligations which appear within the Contract Documents applicable to Subcontractor's Work. The warranty provided in this Paragraph 14 (a) shall be in addition to and not in limitation of any right, warranty or remedy required or influenced by law or by the applicable Contract Documents.

(*Id.* § 14.)

12.    Plaintiff claims that it began to observe moisture damage and leaking on the interior of the premises following Roof US's work and gave notice of such damage to its insurer, Lloyd's of London. Lloyd's contended that the work was not performed in a good and workmanlike manner.

13.    In February of 2024, Plaintiff retained Thompson Engineering to inspect the roof systems and associated components installed on the Sanctuary and Educations Buildings by Roof US to determine the cause of the water leaks and subsequent damage on the interior of the premises. Later, Plaintiff was informed by Thompson Engineering that the roof was not properly installed and that there were

deficiencies with respect to both roof systems. Thompson Engineering further reported deficiencies associated with the low slope roof on the Education Building. According to Thompson Engineering, flashings, sealants, and other waterproofing systems around the perimeter of the roof on the Education Building were not properly installed.

14.    In May of 2024, Plaintiffs filed suit against Lloyd's of London, Lloyd's Market Association, Certain Underwriters at Lloyd's, and Nations Roof arising out of the roofing work performed at the Sanctuary and Education Buildings. Plaintiff alleges the roof surfaces were not properly prepared prior to installation of the low slope roof on the Education Building, and that flashings, sealants, and associated components were not properly installed on the Education Building. Plaintiff also alleges that the flashings and sealants were not properly installed on the shingle roof on the Sanctuary Building.

15.    Under the Subcontract Agreement, Roof US agreed to indemnify Nations Roof for any loss or liability arising out of or relating to Roof US's work:

**Section 15. Indemnification.**

(a)    To the fullest extent permitted by law, Subcontractor shall indemnify, pay for the defense and hold harmless the Owner, Architect, General Contractor, Nations, any other party whom Nation is required to indemnify pursuant to the General Contract, and all of their agents, officers, directors and employees from and against all claims, suits, damages, losses and expenses, including attorney's fees, arising out of or resulting from

(1) negligent acts or omissions of Subcontractor or anyone directly or indirectly employed by Subcontractor or for whose acts Subcontractor is liable; (2) breach of this Subcontract; (3) Subcontractor's Work not being performed properly; (4) claims by or on behalf of employees, agents, representatives, suppliers or subcontractors of Subcontractor; and (5) claims by third parties who allege they have been injured or damaged by actions of Subcontractor. Subcontractor is not requested to indemnify Nations for negligence of Nations, but the fact that a suit or claim may allege negligence by Nations does not excuse or relieve Subcontractor from its obligations under this Paragraph 15 if the underlying grounds for the suit or claim against Nations are covered by this Paragraph 15. Subcontractor's indemnification obligation includes costs incurred to enforce this indemnification provision.

**Section 19. Claims and Disputes.**

(b)    All claims, disputes and other matters in question between Subcontractor and Nations which concern, relate to or involve in any respect claims or disputes between Nations and Owner, General Contractor or Construction Manager shall be decided in accordance with the procedure set forth in the General Contract. If a claim is filed in court or arbitration against Nations pertaining to the Work performed by Subcontractor, Nations shall be entitled to join Subcontractor in that proceeding, and Subcontractor agrees to be so joined and to be bound by the result of any such proceeding to the same extent Nations is bound. Subcontractor hereby agrees to submit to the jurisdiction and venue of the court or arbitration tribunal specified in the General Contract, and waives any objection to jurisdiction, venue, or convenience of the forum.

(*Id.* §§ 15, 19.)

16.    Under Section 8 of the Subcontract Agreement, Roof US was also

required to maintain commercial general liability insurance and professional liability

insurance, and to provide Nations Roof proof of this insurance upon request. Under that same section, Roof US agreed to provide general liability insurance naming Nations Roof Gulf Coast, LLC as an Additional Insured.

17.    On November 22, 2024, Nations Roof demanded that Roof US abide by its contractual and common law obligations and indemnify Nations Roof. To date, Roof US has failed to abide by its indemnification obligations, including its obligation to defend Nations Roof. Roof US is liable to Nations Roof for the costs, expenses, and attorney's fees incurred by Nations Roof. Roof US is also liable to for all claims, suits, damages, losses, and expenses incurred by Nations Roof as a result of Roof US's work.

18.    Moreover, no coverage has been extended under Roof US's commercial general liability insurance carrier to cover the claims at issue. At least one of Roof US's insurance carrier has taken the position that "Nations Roof does not qualify as an insured nor an additional insured under the policy issued to Roof US."

19.    Nations Roof denies all allegations of wrongdoing or liability on its part. But, if and to the extent that Nations Roof is found liable to Plaintiff for any of the allegations of the Complaint, Roof US is solely responsible for any such liability.

## CAUSES OF ACTION AGAINST ROOF US

### COUNT ONE
### INDEMNIFICATION (CONTRACTUAL)

20.     In or around October of 2020, Nations Roof and Roof US entered into a Subcontract Agreement wherein Roof US agreed to perform the roof repair and replacement for Plaintiff's Sanctuary and Education Buildings in a good and workmanlike manner.

21.     Shortly after the Subcontract Agreement was executed, Roof US performed the work on Plaintiff's roofs.

22.     Plaintiff claims that it observed moisture damage and leaking on the interior of the premises in 2024 and gave notice of such damage to its insurer. Lloyd's contended that the work was not performed in a good and workmanlike manner.

23.     In February of 2024, Plaintiff retained Thompson Engineering to inspect the roof systems and associated components installed on the Sanctuary and Educations Buildings to determine the cause of the water leaks and subsequent damage on the interior of the premises. Later, Plaintiff was informed by Thompson Engineering that the roof was not properly installed and that there were numerous deficiencies with respect to both roof systems.

24.     Eventually, Plaintiff filed suit against its insurer and Nations Roof, seeking relief for damage to its premises arising out of the roofing work performed at the Sanctuary and Education Buildings by Roof US.

25.     Under the Subcontract Agreement, Roof US is contractually obligated to defend and indemnify Nations Roof Plaintiff's claims and for the damages allegedly suffered by Plaintiff.

26.     Under the Subcontract Agreement, Paragraph 15(a) states, in part, that

> [T]o the fullest extent permitted by law, Subcontractor shall indemnify, pay for the defense and hold harmless the Owner, Architect, General Contractor, Nations, any other party whom Nation is required to indemnify pursuant to the General Contract, and all of their agents, officers, directors and employees from and against all claims, suits, damages, losses and expenses, including attorney's fees, arising out of or resulting from (1) negligent acts or omissions of Subcontractor or anyone directly or indirectly employed by Subcontractor or for whose acts Subcontractor is liable; (2) breach of this Subcontract; (3) Subcontractor's Work not being performed properly; (4) claims by or on behalf of employees, agents, representatives, suppliers or subcontractors of Subcontractor; and (5) claims by third parties who allege they have been injured or damaged by actions of Subcontractor.

27.     Roof US breached the Subcontract Agreement by, among other things,

a.     Failing to indemnify and defend Nations Roof against Plaintiff's claims;

b.     Failing to properly add Nations Roof as an Additional Insured under its general liability insurance.

28.    Roof US's breaches have caused and continue to cause harm and damages to Nations Roof, including in having to incur the costs to defend against Plaintiff's claims and in facing liability as a result of Roof US's work

## COUNT TWO
## INDEMNIFICATION (COMMON LAW)

20.    Nations Roof subcontracted with Roof US to perform the roof repair and replacement for Plaintiff's Sanctuary and Education Buildings in a good and workmanlike manner.

21.    According to Plaintiff, Roof US failed to properly install, repair, or replace the roofs or roof systems on the Sanctuary and Education Buildings in a good and workmanlike manner and in accordance with all applicable statutes, ordinances, and regulations, which ultimately led to the damage to the premises at issue in this action and subjecting Nations Roof to claims from Plaintiff.

22.    Roof US is liable to Nations Roof for Plaintiff's claims against Nations Roof.

23.    Roof US's actions have caused and continue to cause harm and damages to Nations Roof, including in having to incur the costs to defend against Plaintiff's claims and in facing liability as a result of Roof US's work.

## COUNT THREE
## BREACH OF CONTRACT

29.    Nations Roof and Roof US entered into the Subcontract Agreement under which Roof US agreed to perform the roof repair and replacement for Plaintiff's Sanctuary and Education Buildings in a good and workmanlike manner.

24.    Under the Subcontract Agreement, Roof US was required to "perform the Work in a timely and workmanlike manner and in accordance with the Contract Documents and all applicable statutes, ordinances and regulations, to the satisfaction of Nations and all parties to whom Nations [Roof's] work may be subject to approval, including the Architect and Owner." (Ex. A § 3.) Roof US was also required to "assume[] towards Nations [Roof] all of the obligations applicable to its work with Nations [Roof] has assumed toward the Owner, General Contractor and/or Construction Manager." (*Id.* § 1.) Roof US was required to, among other things, properly removing the then-existing roofs on the Sanctuary and Education Buildings, properly preparing the surfaces, and replacing the roofs on both buildings in accordance with applicable building codes, industry standards, specifications, and installation instructions of the manufacturers of the roof systems and associated components.

30.    Roof US breached its Subcontract Agreement with Nations Roof by, as alleged by Plaintiff, failing to properly install, repair, or replace the roofs or roof systems on the Sanctuary and Education Buildings in a good and workmanlike

manner and in accordance with the Subcontract Agreement and all applicable statutes, ordinances and regulations, which ultimately led to the damage to the premises at issue in this action and subjecting Nations Roof to claims from Plaintiff.

31.    Roof US also breached the Subcontract Agreement by, among other things, failing to indemnify and defend Nations Roof against Plaintiff's claims and failing to properly add Nations Roof as an Additional Insured under its general liability insurance.

32.    The Subcontract Agreement is an unambiguous and enforceable contract. Nations Roof performed under the contract by paying Roof US for the work, but Roof US failed to perform under the Subcontract Agreement.

33.    Roof US's breaches have caused and continue to cause harm and damages to Nations Roof, including in having to incur the costs to defend against Plaintiff's claims and in facing liability as a result of Roof US's work.

## COUNT FOUR
## BREACH OF EXPRESS AND IMPLIED WARRANTIES

34.    Under the Subcontract Agreement, Roof US warranted its work against all deficiencies and defects in workmanship and materials. Roof US further warranted that all work performed by it would be of good quality, free from faults and defects, and in conformance with the Contract Documents. Roof US agreed to satisfy all of its warranty obligations.

35.     Under applicable law, Roof US was also required to use reasonable skill and care in fulfilling its contractual obligations and in performing its work.

36.     Based on the allegations in the Complaint, Roof US failed to perform the work properly, in a good and workmanlike manner, and in accordance with all applicable express and implied warranties. According to Plaintiff, Roof US's failures included:

> a.     failing to properly prepare the surface prior to installation of the low slope roof on the Education Building;
>
> b.     failing to properly install flashings, sealants and associated components with the installation of the low slope roof on the Education Building;
>
> c.     failing to properly install the low slope roof on the Education Building;
>
> d.     failing to properly install flashings and sealants with the shingle roof on the Sanctuary Building;
>
> e.     failing to properly install the shingle roof on the Sanctuary Building.

37.     Roof US's failure to properly perform the work resulted in defects, including water leaks and subsequent damage on the interior of the premises.

38.     Roof US failed to respond to Plaintiff's allegations that the roofs on the Sanctuary and Education Buildings were not in compliance with its warranties or applicable industry standards , in violation of its warranties.

39.     Roof US also failed to repair or replace the roofs, in violation of its warranties.

40.     Roof US's breaches of applicable warranties have caused and continue to cause harm and damages to Nations Roof, including in having to incur the costs to defend against Plaintiff's claims and in facing liability as a result of Roof US's work.

## COUNT FIVE
## NEGLIGENCE

41.     Roof US owed Nations Roof a duty to perform the roofing work in a good and workmanlike manner, to use reasonable skill and care in fulfilling its obligations, and to perform the work in accordance with all applicable statutes, ordinances, and regulations, and to the satisfaction of Nations Roof.

42.     Based on the allegation in the Complaint, Roof US failed to perform its work in accordance and in keeping with its obligations. Roof US breached its above-referenced duties to Nations Roof by, as alleged by Plaintiff:

      a.     failing to properly prepare the surface prior to installation of the low slope roof on the Education Building;

      b.     failing to properly install flashings, sealants and associated components with the installation of the low slope roof on the Education Building;

      c.     failing to properly install the low slope roof on the Education Building;

    d.     failing to properly install flashings and sealants with the shingle roof on the Sanctuary Building;

    e.     failing to properly install the shingle roof on the Sanctuary Building.

43.    These breaches were the proximate cause of Nations Roof's damages.

44.    Roof US's breaches have caused and continue to cause harm and damages to Nations Roof, including in having to incur the costs to defend against Plaintiff's claims and in facing liability as a result of Roof US's work.

## PRAYER FOR RELIEF

Nations Roof respectfully demands the following relief:

    A.     Compensatory damages to which Nations Roof may prove its entitlement;

    B.     punitive damages;

    C.     pre-judgment and post-judgment interest;

    D.     reasonable attorneys' fees, expenses, and costs, including, but not limited to, all costs incurred in enforcing Roof US's indemnification obligations;

    E.     such further damages or other relief to which Nations Roof may be entitled.

## JURY DEMAND

Nations Roof demands a trial by jury.

Respectfully submitted this 22nd day of May, 2025.

/s/ Jorge A. Solis
Jorge A. Solis (ASB-2144-A14T)
Katherine T. Powell (ASB-1047-H60T)
Chatham M. DeProspo (ASB-1108-T88G)
**BUTLER SNOW LLP**
One Federal Place, Suite 1000
1819 Fifth Avenue North
Birmingham, Alabama 35203
(205) 297-2200
Jorge.Solis@butlersnow.com
Katie.Powell@butlersnow.com
Chatham.DeProspo@butlersnow.com

*Counsel for Nations Roof Gulf Coast, LLC*
(*Defendant*)

Please serve the third-party defendants as follows:

Roof US, LLC
c/o Cary Purcell (Registered Agent)
3655 Cherokee Street NW, Suite 13
Kennesaw, Georgia 30144

Roof US Roofing & Restoration, LLC
c/o Jeff Banks (Registered Agent)
1301 Shiloh Road NW., Suite 1610
Kennesaw, Georgia 30144

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that a true and correct copy of the foregoing has been served on all parties to this action by e-file using the Court's CM/ECF system, electronic mail and/or by depositing a copy of the same in the U.S. Mail, first-class postage prepaid and properly addressed as follows:

Jonathan R. Law
DANIEL, UPTON, ANDERSON,
LAW & BUSBY, P.C.
30421 State Highway 181
Daphne, Alabama 36527
JRL@dupm.com

Gregory E. Vaughan
VAUGHAN, POE, & BISHOP, LLC
507 Church Street
Mobile, Alabama 36602
greg@vaughanpoe.com

*Counsel for Springhill Avenue United Methodist Church*
(*Plaintiff*)

Joseph Aguirre
WOOD, SMITH, HENNING
& BERMAN LLP
1230 Peachtree Street, Suite 2350
Atlanta, Georgia 30309
jaguirre@wshblaw.com

*Counsel for Lloyd's of London*
(*Defendant*)

Done this the 22nd day of May, 2025.

/s/ Jorge A. Solis
OF COUNSEL

# Exhibit B



## SUBCONTRACT AGREEMENT

THIS AGREEMENT made this __26th____ day of ____October, 2020_____, by and

between **Nations Roof Gulf Coast**, having its principal place of business at _3150 Lees Lane Mobile AL 36693_

(hereinafter referred to as "Nations"), and Roof US Roofing & Restoration LLC _____

_____    located    at

_____4025 Pleasantdale RD, Ste. 320 Doraville GA 30340_____

_____ (hereinafter referred to as the "Subcontractor"), for:

PROJECT: Springhill United Methodist Church__
_____

ADDRESS:__2519 Springhill Ave Mobile Al 36607
_____

OWNER: ___United Methodist Church
_____

### W I T N E S S E T H :

It is agreed by and between the parties hereto as follows:

1.    **The Contract Documents.**  Subcontractor recognizes that Nations will be bound to plans and specifications and other construction contract documents.   Subcontractor agrees to comply with and be bound by the contract documents binding Nations.  The Contract Documents that are part of this Subcontract Agreement include:  (1) this Agreement and any exhibits attached hereto; (2) the Contract between Nations and Owner, General Contractor or Construction Manager, including all General Conditions and Supplementary Conditions, if any (hereinafter referred to as "General Contract"); and (3) the Drawings, Specifications and all Addenda or Modifications to the above documents which may be issued from time to time.

Subcontractor hereby assumes toward Nations all of the obligations applicable to its work which Nations has assumed toward the Owner, General Contractor and/or Construction Manager.  Subcontractor further agrees that its rights hereunder shall be subject to the limitations and conditions imposed upon Nations by the Contract Documents.

2.    **The Work.**  Subcontractor agrees that it shall at its own expense perform, furnish and provide all labor, materials, equipment, tools, scaffolding, hoisting, fall protection and services proper for or incidental to the performance and completion of the following (hereinafter referred to as the "Work"):

_____

   See attached scope of work _____

_____

_____

_____

_____

       Subcontractor shall perform the Work in a timely and workmanlike manner and in accordance with the Contract Documents and all applicable statutes, ordinances and regulations, to the satisfaction of Nations and all parties to whom Nations' work may be subject to approval, including the Architect and Owner. Subcontractor shall not assign or subcontract the performance of said Work or any part thereof without the prior written consent of Nations.

       3.    **Site Inspection and Familiarity with the Work.**  Subcontractor warrants that prior to signing this Subcontract Agreement, Subcontractor has made such on-site inspections and familiarized himself with the Contract Documents and job site conditions and restrictions attending the Work, as he deemed necessary.  Subcontractor further warrants that he has satisfied himself as to the nature and location of the Work to be performed, the general and local conditions and all matters which in any way affect the ability of the Subcontractor to perform the Work, and that Subcontractor can perform the Work for the contract price and within the prescribed time of performance.  Subcontractor agrees that he will make no claim for, and has no right to additional payment or extension of time for completion of the Work because of any failure on his part to acquaint himself fully with all conditions relating to the Work and the Contract Documents.

       4.    **The Contract Sum.**  Nations shall pay the Subcontractor for the performance of the Work, subject to additions and deductions authorized pursuant to Paragraph 12, the Contract Sum of __█████████████ Thousand _____ Dollars_____

(\$_█████████_____).

       5.    **Payment By Nations.**

       (a)    Payment of the Contract Sum shall be due when the Work is fully completed and performed in accordance with the applicable Contract Documents.  Nations shall not be obligated to make payment until Nations has received payment from the Owner or General Contractor for the Work performed by Nations, it being understood and agreed between Subcontractor and Nations that payment to Nations for Subcontractor's Work shall be a condition precedent to Nations' payment to Subcontractor.

       (b)    If the work to be performed by Subcontractor extends for a period greater than one (1) month and Nations is entitled to submit progress payment requests, Subcontractor may likewise submit monthly progress payment requests.  Progress payment requests should be submitted in accordance with the requirements applicable to Nations and shall be subject to ten percent (10%) retainage.  Nations shall make payment of approved progress payment requests within three (3) days of receipt of payment from Owner or General Contractor.

       (c)    Payment to the Subcontractor shall in no way relieve the Subcontractor of liability for any defect pertaining to the Work performed by Subcontractor or breach of any obligation under the Contract Documents.

       (d)    Nations may withhold or deduct amounts otherwise due under this Subcontract Agreement or any other contractual arrangement between the parties to cover Nations' reasonable estimate of any costs or liability Nations has incurred or may incur for which the Subcontractor may be responsible per the terms of this Subcontract Agreement.

2

6.    **Payment and Performance Bonds.** When requested by Nations prior to commencement of construction, Subcontractor shall provide payment and performance bonds in forms and with surety acceptable to Nations, in the full amount of the Contract Sum. The premiums for these bonds shall be paid by Subcontractor, unless Nations agrees in writing to pay such premiums.

7.    **Time of Performance.**

(a)    The Work to be performed under this Subcontract Agreement shall be commenced _____ 11/16/2020 _____ and, shall be completed not later than _____ 12/14/2020 _____.

(b)    Time is of the essence of this Subcontract Agreement.

(c)    In the event that a claim is brought against Nations concerning a delay in the progress of the Work which arises out of a delay of the Subcontractor, the Subcontractor in turn shall be responsible to Nations for all damages thereby suffered, including expenses and attorney's fees incurred by Nations resulting from lack of timely performance by Subcontractor. Subcontractor shall be responsible for any liquidated damages asserted or assessed against Nations arising out of or relating to Subcontractor's work.

8.    **Insurance.** Subcontractor shall maintain during the course of construction and for a period equal to the statute of limitations in the jurisdiction where the Project is located, the following minimum insurance coverages:

(a)    **Workers Compensation.** Subcontractor shall carry worker's compensation insurance in the amount and type required by the jurisdiction in which the Work is performed.

If Subcontractor does not maintain or provide proof of workers' compensation insurance coverage prior to job start, Nations and Subcontractor hereby agree that Nations may withhold the cost of workers' compensation insurance coverage from the amount otherwise due Subcontractor. The amount of any deductible paid by Nations will be reimbursed by Subcontractor or withheld from the Contract Sum if not otherwise paid by Subcontractor.

(b)    **Employers Liability.** Subcontractor shall carry Employer's Liability Insurance with minimum limits of:

 each accident
disease-policy limit
disease-each employee

(c)    **Commercial General Liability.** Subcontractor shall carry Commercial General Liability insurance written on an occurrence basis using a commercial general liability form (1988 or equivalent) and including contractual liability, products /completed operations and no limitation for explosion, collapse, residential structures, water damage and underground hazards. Limits of:

Bodily Injury and Property Damage Combined Per Occurrence
Bodily Injury and Property Damage Combined Aggregate Per Project
Personal and Advertising Injury
Products / Completed Operations

There shall be no exclusion or coverage limitation applicable to water damage claims, no torch exclusion and no residential or habitational exclusion.

(d)    **Automobile Liability.** Subcontractor shall carry commercial Automobile Liability insurance covering all owned, hired and borrowed vehicles used in connection with the Work with a limit not less than _____ for injuries, including accidental death and damage to property for any one occurrence.

(e)    **Umbrella/Excess Liability.** Subcontractor shall carry a Commercial Umbrella or Excess Policy with limits not less than _____ providing excess coverage over the Subcontractor's Commercial General Liability, Automobile Liability and Employers Liability insurance coverages.

3

(f)    **Pollution Coverage.**  Subcontractor shall carry coverage for claims arising from fumes, vapors, emissions, spills and other such claims arising out of Subcontractor's Work.

(g)    **Installation Floater or Builder's Risk Insurance Covering Subcontractor's Work.**  Subcontractor shall carry insurance coverage in an amount at least equal to the Contract Sum.

(h)    **Additional Insured.**  Nations, Owner and any other parties whom Nations is required to name as additional insureds shall be additional insureds on Subcontractor's commercial general liability, automobile liability and excess umbrella liability insurance policies.  The forms of Additional Insured coverage shall be CG 20 10 (07/04) or CG 20 33 (07/04) and CG 20 37 (07/04).  Additional insured coverage shall apply to completed operations.

(i)    **Waiver of Subrogation.**  Subcontractor agrees that it waives rights of subrogation as against Nations, Owner and such other parties as Nations is required to waive subrogation rights.

( j)    **Deductibles.**  All deductibles or self-insured retentions are the responsibility of Subcontractor, including claim handling and/or legal expenses.

(k)    **Certificate of Insurance.**  Subcontractor shall provide to Nations, a certificate of insurance prior to commencement of work and shall provide written notice to Nations of cancellation, non-renewal or material reduction in coverage of insurance at least thirty (30) days prior to effective date for non-renewal or material changes.  Insurance coverage shall be continuously maintained and Subcontractor shall provide renewal evidence at least ten (10) days prior to policy expiration.  The "Name of Person or Organization" section should list all the Additional Insured parties, but failure to do so shall not affect additional insured status or the obligation of Subcontractor to make other parties additional insureds.

(l)    **Professional Liability.**  If the services provided by Subcontractor include performing engineering, design, architectural or other professional services, Subcontractor shall maintain a professional liability policy with minimum coverage of $1 million.

(m)    All policies maintained by Subcontractor will be primary and non-contributory in the event of any loss arising out of Subcontractor's performance and shall provide that where there is more than one insured, the policy will operate, except for limits of liability, as if there were a separate policy covering each insured.

(n)    All insurance policies shall be written by companies authorized to transact business in the state in which the work is to be performed and acceptable to Nations.

(o)    Failure of the Subcontractor to comply with the insurance requirements may, at Nations' option, result in:

(1)    termination under Article 17(a) or suspension of your work until the requisite insurance is in place with all associated and additional costs borne by Subcontractor; and/or

(2)    procurement of insurance by Nations with costs to be borne by Subcontractor and deducted from the Contract Sum; and/or

(3)    indemnification by Subcontractor of all costs, damages, losses and expenses incurred by Nations arising out of or relating to Subcontractor's Work or resulting from operations of Subcontractor and/or losses suffered by anyone arising from Subcontractor's operations including claims relating to employees of the Subcontractor that would have been covered by insurance Subcontractor was obligated to carry.

(p)    The amounts of insurance specified herein and agreed to by the parties shall in no way limit the liability of the Subcontractor.

(q)    Subcontractor shall be responsible for familiarizing himself with the agreement existing between Nations and Owner, General Contractor or Construction Manager and complying with any terms thereof to the extent such terms impose additional responsibilities on Nations and/or Subcontractor relating to insurance.

4

(r)     At the option of Nations, the subcontractor must provide a complete certified copy of their General Liability and Umbrella Policies to Nations.

9.     **Compliance With Law.**

(a)     Subcontractor represents and warrants that it is qualified and licensed to perform the Work in accordance with the requirements of the jurisdiction in which the work is to be performed.  Subcontractor shall comply with federal, state and local laws, ordinances and codes, including tax and business occupation laws, social security acts, withholding requirements, proper classification of workers, unemployment compensation acts, worker's compensation acts and immigration statutes and regulations.  Subcontractor shall take all appropriate actions to verify that each of its employees and agents are legally eligible to work in the United States and shall maintain current I-9 forms for its employees and workers who perform the Work or are present at the jobsite.  Subcontractor shall hold harmless and indemnify Nations from any costs, damages, expenses, fines and losses incurred by Nations resulting from a failure by Subcontractor to comply with all legal requirements applicable to Subcontractor.

(b)     Subcontractor shall give all notices and comply with all laws, ordinances, rules, codes, regulations and orders of any public authority bearing on the performance of the Work.  Subcontractor shall secure and pay for all permits and governmental fees, licenses and inspections necessary for the proper execution and completion of the Work.

10.     **OSHA and Regulatory Compliance.**

(a)     Subcontractor shall give all notices and comply with all laws, ordinances, rules, codes, regulations and orders of any public authority bearing on the performance of the Work.  Subcontractor shall at all times perform all Work in accordance with the current regulations of the Occupational Health and Safety Administration (OSHA) and, where applicable, the Environmental Protection Agency (EPA) and the state agencies where requirements extend to the Work performed by Subcontractor and shall indemnify, defend and hold harmless Nations from and against all losses, claims, expenses, fines, citations and attorney's fees incurred by Nations resulting from an actual or alleged failure by Subcontractor to do so.  Subcontractor shall be responsible for any citations, fines and penalties if OSHA or EPA regulations or other regulations are violated and to take the steps necessary, at Subcontractor's expense, to maintain compliance with all applicable regulations.  Subcontractor shall secure and pay for all permits and governmental fees, licenses and inspections necessary for the proper execution and completion of its Work.

(b)     Subcontractor shall take all necessary safety precautions with respect to his Work, shall comply with all safety measures initiated by others on the job and shall comply with all applicable laws, ordinances, rules, regulations and orders of any public authority for the safety of persons or property.  Subcontractor shall fully cooperate with Nations in the observance of federal, state and private safety programs applicable to his Work.  The Subcontractor shall report immediately to Nations any injury to any of the Subcontractor's employees at the site.

(c)     **Safety Data Sheets and Hazardous Materials**.  Subcontractor shall furnish Safety Data Sheets (SDS) prior to commencing work.  Subcontractor agrees that in performing its Work, it will not create, use or dispose of any hazardous substances or materials in an unlawful or hazardous manner and shall be solely responsible for the lawful, proper and safe handling, storage and removal of all hazardous wastes, substances and materials that are introduced to the site or removed from the site by Subcontractor.  The term "hazardous wastes, substances and materials" shall mean those materials and substances prohibited, regulated, or the use of which is controlled by any agency of the federal government or state or local agency.  Subcontractor shall comply will all federal, state and local regulations dealing with the use, storage or disposal of all hazardous wastes, substances and materials.  Subcontractor shall be responsible for any and all claims and damages resulting from the use, handling, storage, emissions, removal and disposal of such hazardous wastes, substances and materials at the Project, and will defend and hold Nations harmless from any and all liability associated with such use, handling, storage, emissions, removal and disposal including all associated attorneys' fees and costs and costs of any cleanup operations required by any governmental authority or Nations.

(d)     Subcontractor is solely responsible for the health and safety of its employees, agents, and subcontractors, including but not limited to ensuring that proper fall protection is followed by each of its employees, agents and subcontractors at all times in accordance with 29 CFR Subpart M, Fall Protection.  Subcontractor agrees to indemnify, defend and hold Nations harmless from and against any citations, fines and penalties assessed by OSHA or other regulatory agencies and expenses incurred by Nations, including attorneys' fees, arising out of or resulting from the conduct of Subcontractor, its employees, agents and subcontractors.  In the event that Nations or others are

5

cited by OSHA or another agency under the multi-employer work site doctrine because of practices, conditions, lack of compliance or a hazard created by Subcontractor, the Subcontractor shall be responsible for the citation, fine and penalty.

    (e)    As an independent contractor, Subcontractor is exclusively responsible for compliance with these regulations and laws and for the safety of Subcontractor's employees. Nevertheless, Nations may, from time to time, conduct a safety inspection at the Project for safety violations including, but not limited to, violations of those requirements identified on Exhibit "A" to this agreement, Subcontractor Safety Requirements. Subcontractor recognizes and agrees that safety violations may result in fines and/or the removal of certain of Subcontractor's personnel from the jobsite, in accordance with the Safety Violation Fine Schedule included in Exhibit "A". Any worker or foreman removed due to a safety violation will be immediately replaced by Subcontractor at no additional charge.

    11.    **Protection of Work.**

    (a)    During performance and until final acceptance of its Work by Nations and Owner, the Subcontractor shall bear the risk of loss and be responsible for and obligated to protect its finished and unfinished work, material, equipment and other things against damage, loss or injury. In the event of damage, loss or injury, the Subcontractor shall promptly replace or repair such work, material or equipment. Subcontractor shall maintain a builder's risk or installation floater insurance policy against such perils as fire, vandalism, wind and extended coverage.

    (b)    Subcontractor shall take all necessary precautions in carrying out his Work to properly protect the work of Nations and other subcontractors, and in the event of any damage, loss or injury to such work, Subcontractor shall promptly replace or repair such work or make payment for same.

    12.    **Changes and Extra Work.** Subcontractor may be ordered in writing by Nations to make changes in the Work consisting of additions, deletions or other revisions, the Contract Sum being adjusted accordingly, in writing by Nations. Subcontractor shall not proceed to perform any work which Subcontractor believes to be extra work or different from what is required under this Subcontract Agreement without first receiving written authorization signed by an officer of Nations. Subcontractor shall submit to Nations within five (5) days of receiving a request from Nations to perform changed or extra work written copies of any requested adjustment to the Contract Sum or Contract Time, in a manner consistent with the Contract Documents.

    13.    **Liens.**

    (a)    Subcontractor shall keep the Project and the lands upon which it is situated free from all mechanic's liens, claims on bonds and all other liens by reason of its Work or of any materials or other things used by the Subcontractor, its agents, employees, materialmen and subcontractors. If the Subcontractor fails to remove any lien by bonding it or otherwise or fails to cause the withdrawal of any claim on a payment bond, Nations may retain sufficient funds, out of any money due or thereafter to become due by Nations to the Subcontractor, to pay same and all costs incurred by reasons thereof, and may pay said lien or claim on bond and costs out of any funds at any time in the hands of Nations owing to the Subcontractor.

    (b)    When required by Nations and as a condition precedent to payment, Subcontractor shall provide, in a form satisfactory to Nations and Owner, partial lien and claim waivers and affidavits from Subcontractor and its subcontractors, employees, materialmen and suppliers applicable to the Work for which Subcontractor seeks payment. Such lien and claim waivers may be made conditional upon payment.

    14.    **Warranty.**

    (a)    The Subcontractor warrants its Work against all deficiencies and defects in workmanship and materials and as called for in the Contract Documents. Subcontractor warrants that all work performed by the Subcontractor shall be of good quality, free from faults and defects, and in conformance with the Contract Documents. All Work not conforming to these requirements, including substitutions not properly approved and authorized, may be considered defective. Subcontractor agrees also to satisfy such warranty obligations which appear within the Contract Documents applicable to Subcontractor's Work. The warranty provided in this Paragraph 14(a) shall be in addition to and not in limitation of any other right, warranty or remedy required or imposed by law or by the applicable Contract Documents.

6

(b)     Subcontractor shall, within forty-eight (48) hours after receiving written notice from Nations to do so, proceed to remove from the site all materials rejected by Nations, Architect or Owner, whether assembled or not, and to dismantle all portions of the Work which shall be condemned as unsound or in any way fails to conform to the requirements of the applicable Contract Documents, and to replace, at its own expense, all Work damaged or destroyed thereby, and replace with sound materials, all materials which are removed from the said site. Subcontractor, in addition to removing and replacing, at its own expense, its defective work, shall pay for all damages caused by such defects, and all expenses necessary to replace or repair satisfactorily any other Work damaged or disturbed in making repairs to or replacements of its own Work.

15.     **Indemnification.**

(a)     To the fullest extent permitted by law, Subcontractor shall indemnify, pay for the defense and hold harmless the Owner, Architect, General Contractor, Nations, any other party whom Nation is required to indemnify pursuant to the General Contract, and all of their agents, officers, directors and employees from and against all claims, suits damages, losses and expenses, including attorney's fees, arising out of or resulting from (1) negligent acts or omissions of Subcontractor or anyone directly or indirectly employed by Subcontractor or for whose acts Subcontractor is liable; (2) breach of this Subcontract; (3) Subcontractor's Work not being performed properly; (4) claims by or on behalf of employees, agents, representatives, suppliers or subcontractors of Subcontractor; and (5) claims by third parties who allege they have been injured or damaged by actions of Subcontractor. Subcontractor is not requested to indemnify Nations for negligence of Nations, but the fact that a suit or claim may allege negligence by Nations does not excuse or relieve Subcontractor from its obligations under this Paragraph 15 if the underlying grounds for the suit or claim against Nations are covered by this Paragraph 15. Subcontractor's indemnification obligation includes costs incurred to enforce this indemnification provision.

(b)     In any and all claims against the Owner, Architect, General Contractor, Nations, any other party whom Nation is required to indemnify pursuant to the General Contract, or any of their agents or employees by any employee of the Subcontractor, anyone directly or indirectly employed by him or anyone for whose acts he may be liable, the indemnification obligation under this Paragraph 15 shall not be limited in any way by any limitation on the amount or type of damages, compensation or benefits payable by or for the Subcontractor under worker's compensation acts, disability benefit acts or other employee benefit acts.

16.     **Failure to Perform.** If Subcontractor fails to perform its obligations in a timely manner, Nations shall be entitled to take such steps as are necessary to protect Nations' interests, including supplementing Subcontractor's workforce and deducting the cost from amounts otherwise due Subcontractor, requiring Subcontractor to increase its workforce, making payment to materialmen and others who are to be paid by Subcontractor and requiring Subcontractor to work overtime and on weekends. Subcontractor shall reimburse Contractor for additional expenses incurred by Contractor resulting from Subcontractor's inadequate performance, including attorney's fees incurred by Subcontractor.

17.     **Termination.**

(a)     **For Default.** If Subcontractor fails or neglects to carry out its Work in accordance with the Contract Documents, or if Subcontractor fails to supply enough properly skilled workmen or materials to perform its Work in a timely manner, or if Subcontractor fails to make prompt payment for any labor or materials, and Subcontractor fails within three (3) days after receipt of written notice to commence and continue correction of such default or neglect with diligence and promptness, then Nations may, without prejudice to any other right or remedy, terminate this Contract. After such termination and without further notice, Nations or its designee may continue to perform the Subcontractor's Work by whatever method Nations deems reasonable under the circumstances. In the event of such termination by Nations, the Subcontractor shall be entitled to no further payment except as provided subsequently in this paragraph. In the event the unpaid balance of the Contract Sum, after deduction of all claims that Nations may have against the Subcontractor, exceeds the actual total cost (including Nations' reasonable overhead and profit) of finishing the Subcontractor's Work (including compensation of Architect's additional services, attorney's fees and all other legal costs involved and including all other costs and charges related to the completion of the Subcontractor's Work), such excess shall be paid to the Subcontractor upon satisfaction of the conditions for final payment. In the event the actual total cost (including Nations' reasonable overhead and profit, attorneys fee incurred by Nations and all other claims that Nations may have against the Subcontractor) exceeds any such unpaid balance, Subcontractor shall be liable to and shall promptly pay such difference to Nations. Subcontractor shall be liable for all attorney's fees incurred by Nations as a result of a default by Subcontractor, including the attorney's fees incurred by Nations in recovering any amounts owed by Subcontractor to Nations pursuant to this Subcontract Agreement.

7

      (b)     **For Convenience**. If Nations' work is terminated by Owner or General Contractor for any reason, Nations may terminate Subcontractor's work. Subcontractor shall be paid for work performed prior to termination on the same basis as Nations is compensated for Subcontractor's work, but only to the extent Nations is entitled to and does collect such compensation on Subcontractor's behalf.

      (c)     **Bankruptcy.** If Subcontractor files a petition for bankruptcy, or upon the appointment of a receiver for Subcontractor, or upon Subcontractor making an assignment for the benefit of creditors, Nations may terminate this Agreement and any pending Purchase Order Contract(s) by giving forty-eight (48) hours written notice to Subcontractor, unless within that time Subcontractor, its surety or trustee (i) promptly cures all defaults; (ii) provides adequate assurances of future performance; (iii) compensates Nations for all losses resulting from such defaults; and (iv) assumes the obligations of Subcontractor within the time limits proscribed by law.

    18.    **Clean-Up.** The Subcontractor shall at all times keep the premises free from accumulation of waste materials or rubbish arising out of Subcontractor's operations. Clean-up shall be done daily by the Subcontractor, and the debris hauled from the site. If daily clean-up is not done, Nations may do the clean-up and backcharge the Subcontractor.

    19.    **Claims and Disputes.**

      (a)     All claims of Subcontractor must be made by written notice to Nations within fourteen (14) days of Subcontractor's knowledge of the event, incident or condition that gives rise to the claim. In addition, a claim by Subcontractor that pertains to a claim for which the General Contractor, Owner, Architect or Construction Manager would be responsible, must be made within the time frame applicable to claims of Nations against the General Contractor or Owner so that Nations can submit the claim to the General Contractor or Owner in a timely manner. Failure of Subcontractor to provide timely written notice as provided herein shall constitute a waiver of the claim.

      (b)     All claims, disputes and other matters in question between Subcontractor and Nations which concern, relate to or involve in any respect claims or disputes between Nations and Owner, General Contractor or Construction Manager shall be decided in accordance with the procedure set forth in the General Contract. If a claim is filed in court or arbitration against Nations pertaining to the Work performed by Subcontractor, Nations shall be entitled to join Subcontractor in that proceeding, and Subcontractor agrees to be so joined and to be bound by the result of any such proceeding to the same extent Nations is bound. Subcontractor hereby agrees to submit to the jurisdiction and venue of the court or arbitration tribunal specified in the General Contract, and waives any objection to jurisdiction, venue, or convenience of the forum.

      (c)     All other disputes between Subcontractor and Nations and not involving the Owner, General Contractor or Construction Manager, shall be resolved through mediation and arbitration following the Construction Industry Rules of the American Arbitration Association or such other procedures as the parties may agree. Such mediation and arbitration shall be conducted in Douglas County, Georgia. This Agreement shall be governed by and construed in accordance with the procedural and substantive laws of the State of Georgia, without reference to any conflict of law rules.

This Agreement to arbitrate shall be specifically enforceable under the prevailing Georgia arbitration law, without reference to the Federal Arbitration Act. The award rendered by the arbitrators shall be final, and judgment may be entered upon it in any court having jurisdiction thereof.

      (d)     No dispute shall relieve the Subcontractor of the performance of any of his obligations. Subcontractor agrees to continue to perform the Work pending final resolution of any such dispute.

    20.    **Status of Subcontractor.** This Agreement is for the performance of services by Subcontractor as an independent contractor and is not a contract of employment or agency. Nothing in this Agreement shall be construed to create an agency relationship between Nations and Subcontractor. Subcontractor is not authorized to make any representations, warranty or commitment on behalf of Nations or to enter into any contract binding Nations.

**NATIONS ROOF GULF COAST**                   **SUBCONTRACTOR**

3-12-2024                              4A24035HZ7V0001                        6D20240312009568

-10-2024                              4A24035    V0001                        120240710015

By:_____    By:_____

9



# Springhill Methodist church

### *Sanctuary Building*

1. Set up job for site specific safety plan.
2. Perform the following:
3. **Shingle Portion:**
   a. Remove existing shingles and underlayment
   b. Install self-adhering underlayment to roof deck
   c. Install new dimensional shingles. Color to be selected from manufacturer's standard line
   d. Install new 16OZ copper metal flashing to include eave metal, sidewall flashing, headwall flashing, and other miscellaneous metal components for a complete roof system. Existing thru wall counterflashing's to be reused where possible to avoid damage to mortar and the seal through the wall
   e. Install new ridge vents
   f. Shingle warranty supplied by manufacturer
4. **Flat areas:**
   a. Remove existing roof down to deck
   b. Adhere 1/8" tapered insulation in low rise foam
   c. Adhere 60 MIL TPO roofing
   d. Flash all walls, curbs and penetrations
   e. Provide new TPO thru wall scuppers at existing locations and new 16OZ copper collector heads and downspouts
   f. Wall termination to be on the vertical surface at the back of walls as to maintain aesthetic look of building

## Education Building

1. **North Half-Older Construction**
   a. Remove existing roof and Gypsum decking over wire to structural bar joists(SEE NOTE)
   b. Install new G-90 Galvanized 22GA 33KSI 1.5" B deck
   c. Mechanically attach 1/8" tapered insulation
   d. Adhere 60 MIL TPO roofing
   e. Flash all walls, curbs and penetrations
   f. Provide new TPO thru wall scuppers at existing locations and new 16OZ copper

NATIONS ROOF GULF COAST, LLC

3150 LEES LANE · MOBILE, ALABAMA 36693-5227 · (251) 661-1971 · (251) 661-1818 · www.nationsroof.com

3-12-2024                4A24035HZ7V0001                                         60202403120086568

-10-2024                4A24035    V0001                                         120240710015

collector heads and downspouts

g. Wall termination to be on the vertical surface at the back of walls as to maintain aesthetic look of building
h. Provide Nations Roof 2 year workmanship warranty
i. Provide Manufacturer's standard 20 year NDL labor and material warranty
j. **NOTE: Decking removal will cause significant debris to fall inside the building. Area of decking replacement needs to be free of furnishings, fixtures and ceiling tiles. We will remove debris on a daily basis**

2. **South Half-Newer Construction**

k. Remove existing roof down to gypsum roof deck and inspect decking (SEE NOTE BELOW)
l. Adhere 1/8" tapered insulation in low rise foam adhesive
m. Adhere 60 MIL TPO roofing
n. Flash all walls, curbs and penetrations
o. Provide new TPO thru wall scuppers at existing locations and new 16OZ copper collector heads and downspouts
p. Wall termination to be on the vertical surface at the back of walls as to maintain aesthetic look of building
q. **NOTE: decking repairs found during tear off will be performed by removing roof deck in affected locations down to bar joist an installing new B deck. ISO insulation will be used to flush out repairs with existing roof deck before installation of new roofing system.. We anticipate 500 square foot of decking repair to be associated with this project included in subcontract price.**

Total subcontract price..............█████████████

NATIONS ROOF GULF COAST, LLC

3150 LEES LANE · MOBILE, ALABAMA 36693-5227 · (251) 661-1971 · (251) 661-1818 · www.nationsroof.com

3-12-2024                                    4A24035HZ7V0001

-10-2024                        4A24035    V0001                        120240710015

# Exhibit C

## (omitting internal enclosures)

# BUTLER | SNOW

November 22, 2024

**By Email**

Roof US, LLC
Stephen A. Yaklin (Registered Agent)
192 Anderson Street, Suite 125
Marietta, Georgia 30060
Info@roofus247.com

Roof US, LLC
Cary Purcell (Registered Agent)
3655 Cherokee Street NW, Suite 13
Kennesaw, Georgia 30144

> **Re:** **Indemnification Demand to Roof US, LLC Under Subcontract Agreement**
>
> ***Springhill Avenue United Methodist Church, Inc. v. Nations Roof Gulf Coast, LLC, et al.*, U.S. District Court for the Southern District of Alabama, Case No. 1:24-cv-00375-KD-B**

To Whom It May Concern:

Please accept this as our demand for indemnification on behalf of Nations Roof Gulf Coast, LLC ("Nations Roof") and its affiliates.[1] Nations Roof and Roof US entered into a Subcontract Agreement in connection with Roof US's performance of work at the property owned by Springhill Avenue United Methodist Church, Inc. ("Springhill Methodist") in Mobile, Alabama. I am enclosing a copy of the agreement.

Under the Subcontract Agreement, Roof US agreed to indemnify Nations Roof for any loss or liability arising out of or relating to Roof US's work. The Subcontract Agreement provides as follows:

> **Section 15. Indemnification.**
>
> (a)    To the fullest extent permitted by law, Subcontractor shall indemnify, pay for the defense and hold harmless the Owner, Architect, General Contractor, Nations, any other party whom Nation is required to indemnify pursuant to the General Contract, and all of their agents, officers,

---

[1]    These affiliates include Nations Roof, LLC.

One Federal Place, Suite 1000
1819 Fifth Avenue North
Birmingham, Alabama 35203

**JORGE A. SOLIS**
205.297.2216
Jorge.Solis@butlersnow.com

T 205.297.2200
F 205.297.2201
www.butlersnow.com

BUTLER SNOW LLP

November 22, 2024
Page 2

_____

directors and employees from and against all claims, suits damages, losses and expenses, including attorney's fees, arising out of or resulting from (1) negligent acts or omissions of Subcontractor or anyone directly or indirectly employed by Subcontractor or for whose acts Subcontractor is liable; (2) breach of this Subcontract; (3) Subcontractor's Work not being performed properly; (4) claims by or on behalf of employees, agents, representatives, suppliers or subcontractors of Subcontractor; and (5) claims by third parties who allege they have been injured or damaged by actions of Subcontractor. Subcontractor is not requested to indemnify Nations for negligence of Nations, but the fact that a suit or claim may allege negligence by Nations does not excuse or relieve Subcontractor from its obligations under this Paragraph 15 if the underlying grounds for the suit or claim against Nations are covered by this Paragraph 15. Subcontractor's indemnification obligation includes costs incurred to enforce this indemnification provision.

The Subcontract Agreement further provides:

### Section 19. Claims and Disputes.

(b)      All claims, disputes and other matters in question between Subcontractor and Nations which concern, relate to or involve in any respect claims or disputes between Nations and Owner, General Contractor or Construction Manager shall be decided in accordance with the procedure set forth in the General Contract. If a claim is filed in court or arbitration against Nations pertaining to the Work performed by Subcontractor, Nations shall be entitled to join Subcontractor in that proceeding, and Subcontractor agrees to be so joined and to be bound by the result of any such proceeding to the same extent Nations is bound. Subcontractor hereby agrees to submit to the jurisdiction and venue of the court or arbitration tribunal specified in the General Contract, and waives any objection to jurisdiction, venue, or convenience of the forum.

November 22, 2024
Page 3

_____

Finally, under Section 8 of the Subcontract Agreement, Roof US is also required to maintain commercial general liability insurance and professional liability insurance, and to provide Nations Roof proof of this insurance upon request. Under that same section, Roof US agreed to provide general liability insurance naming Nations Roof Gulf Coast, LLC as an Additional Insured.

On or about August 19, 2024, Nations Roof learned that a lawsuit was filed against it by Springhill Methodist arising out of the work performed by Roof US under the Subcontract Agreement. Enclosed is a copy of the complaint. **Accordingly, we demand that Roof US immediately**

1. **defend and indemnify Nations Roof and its affiliates for any loss, claim, expense, liability, or judgment arising from or relating to the allegations in the complaint;**

2. **defend and indemnify Nations Roof, as an additional insured under Roof US's policy / policies;**

3. **provide Nations Roof with a copy of all insurance policies that Roof US procured pursuant to the Subcontract Agreement; and**

4. **put all insurance carriers on notice of the claims in the complaint.**

We ask that you respond to this demand as soon as possible. Failure to do so will result in Nation Roof taking further legal action to assert claims against Roof US, including asserting indemnification claims and/or filing a third-party complaint against Roof US. We look forward to your prompt response. Please reach me directly to discuss.

Sincerely,

BUTLER SNOW LLP

Jorge A. Solis

Enclosures:   Subcontract Agreement; Complaint

cc:          Mrs. Katie Powell          Katie.Powell@butlersnow.com
             Mrs. Chatham DeProspo       Chatham.DeProspo@butlersnow.com